**THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| 2.5 HK LIMITED, | |
| Plaintiff, | Case No.: 1:25-cv-09875 |
| vs. | **Judge Jorge L. Alonso** |
| FLORATE LIMITED, | **Magistrate Judge Jeffrey T. Gilbert** |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S EX PARTE MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER AND ALTERNATIVE SERVICE**

Plaintiff 2.5 HK Limited ("Plaintiff") submits this Memorandum in support of its Ex Parte Motion for Entry of a Temporary Restraining Order and Alternative Service.

This case involves Defendant Florate Limited's ("Defendant") bad faith attempt to monopolize the merely descriptive and generic term "CHATBOX" to eliminate legitimate competition on the U.S. App Store, despite the United States Patent and Trademark Office's ("USPTO") official determination that the term is merely descriptive and generic. Plaintiff is the developer of popular "Chatbox AI: Powerful AI Client" iOS mobile application ("Plaintiff's App") launched on January 2, 2024. Defendant is the developer of another iOS mobile application named "Chatbox AI – Chatbot Assistant" ("Defendant's App"), which is in direct competition with Plaintiff's App. On March 11, 2025, Defendant filed a trademark infringement complaint with Apple Inc. ("Apple") claiming Plaintiff infringed its "CHATBOX" trademark based on a pending trademark application before USPTO. Shortly thereafter, Plaintiff received a complaint notice from Apple with Defendant's contact email claims@florate.io and alleged trademark infringement. Plaintiff engaged in extensive communication with Defendant via email

1

exchanges strongly protesting its invalid trademark claim, but Apple removed Plaintiff's application from the U.S. App Store on June 19, 2025, despite the earlier USPTO's official determination refusing Defendant's trademark application on May 22, 2025. Apple refused to restore Plaintiff's App without Defendant's withdrawal of its trademark complaint.

Defendant has weaponized a seemingly-invalid trademark application, not a registration, to target Plaintiff's legitimate software, causing Apple Inc. to remove Plaintiff's application from the U.S. App Store and inflicting over $100,000 in estimated damages, including user base erosion, reputational damage, development disruption, lost momentum in product advancement and lost In-App purchase revenues etc. Plaintiff seeks emergency relief on two fronts: (1) a Temporary Restraining Order to halt Defendant's abuse of a seemingly-invalid trademark application and enjoining Defendant's further abuse, and (2) alternative service upon Defendant, a Cyprus entity with no U.S. presence but heavily relied on emails to file trademark complaint with Apple and effectively communicate with Plaintiff, where traditional service would cause unacceptable delay while harm continues to accrue daily.

Immediate relief is essential to prevent increasing irreparable harm to Plaintiff while Plaintiff's App remains delisted in the U.S. App Store as Defendant is a foreign entity organized under Cyprus law with no known attachable assets within the United States, rendering any future monetary judgment practically unenforceable.

## I. STATEMENT OF FACTS

Plaintiff is the developer of the widely successful "Chatbox AI: Powerful AI Client" mobile application (Apple ID: 6471368056) with approximately half-million worldwide downloads and operates the popular open-source chatbox software project that has gained global recognition on Github.com. Plaintiff has continuously used "CHATBOX" terminology in commerce in

connection with its software applications since the development and launch of its applications. A significant portion of Plaintiff's business is conducted through major platforms including the Apple's U.S. App Store, which serves as a critical platform for Plaintiff's operations in the United States. Plaintiff has invested substantial resources in product development and marketing to establish its presence and build a reputation for quality and reliability.

**A. The Merely Descriptive and Generic Nature of "CHATBOX" and USPTO's Official Determination**

On November 19, 2024, Defendant filed U.S. Trademark Application Serial No. 98860713 for "CHATBOX," claiming first use in commerce of April 14, 2023. (*See* Compl. Exhibit A).

On May 22, 2025, USPTO issued a non-final Office Action rejecting Defendant's trademark application. The USPTO examiner made two decisive determinations: First, the mark is "merely descriptive" of the identified goods and services because "the wording CHATBOX, meaning user interface of a given chat application, common use for which is a popup window on a business website through which the user interacts with a live agent or AI bot, immediately conveys that applicant's software for generating content, images, research, and analysis are offered in a popup that allows users to connect with agents or AI bots". Second—and more significantly—the mark "appears to be generic," meaning it is a common name for these goods/services and can never be registered or protected as anyone's exclusive right. The examiner explicitly stated: "A generic mark, being the 'ultimate in descriptiveness,' cannot acquire distinctiveness and thus is not entitled to registration on either the Principal or Supplemental Register under any circumstances." (*See* Compl. Exhibit B).

Lastly, the USPTO examiner also found "the filing date of pending U.S. Application Serial No. 98787873 precedes applicant's filing date … If the mark in the referenced application

registers, applicant's mark may be refused registration under Trademark Act Section 2(d) because of a likelihood of confusion with the registered mark. " Notwithstanding the virtually irrebuttable "merely descriptive and generic" finding, the other application for "CHATBOX" preceding Defendant's makes Defendant's pending application even more untenable.

### B. Defendant's Bad Faith Enforcement Actions

To eliminate Plaintiff's direct competition in the AI chatbox market, Defendant filed a complaint with Apple on March 11, 2025, claiming trademark infringement against Plaintiff's app and only listed email claims@florate.io as contact. Despite of numerous email exchanges and the USPTO Office Action Letter dated May 22, 2025, Apple took down Plaintiff's App from the U.S. App Store on June 19, 2025 and refused to restore Plaintiff's App without Defendant's withdrawal of the complaint.

### C. Damages from Defendant's Wrongful Interference

As a direct result of Defendant's bad faith trademark complaint with Apple, Plaintiff has suffered and continues to suffer substantial monthly revenue losses exceeding $20,000, based on documented performance metrics and historical revenue data. Plaintiff has also suffered: user base erosion as customers migrate to competitors during the outage; reputational damage from the perception of legal or operational problems; development disruption and lost momentum in product advancement; and legal and administrative costs to defend against Defendant's frivolous claims, rendering the total estimated damages as of this date exceed $100,000 and continue accruing daily.

Plaintiff has been unable to reach an agreement with Defendant to restore its App, nor has Defendant participated in good faith discussions to resolve the dispute. Without intervention by this Court, Plaintiff's business operations will continue to suffer irreparable harm, and

Defendant's bad faith enforcement will set a dangerous precedent allowing improper monopolization of merely descriptive and generic terms.

Out of necessity, Plaintiff brings the present motion for a TRO to order Apple to restore Plaintiff's App and enjoining Defendant's further trademark enforcement actions, restore Plaintiff's legitimate business operations, preserve the status quo, and allow Plaintiff the opportunity to defend itself against Defendant's baseless allegations in a proper judicial forum.

## II. EX PARTE TEMPORARY RESTRAINING ORDER IS APPROPRIATE

### A. Applicable Standards

In the Seventh Circuit, a temporary restraining order that is sought with notice to the adverse party is treated as a request for a preliminary injunction. See e.g., *Budget Rent A Car Corp v. Harvey Kidd Automotive*, 249 F. Supp. 2d 1048, 1049 (N.D. Ill. 2003). Temporary restraining orders and preliminary injunctions are each governed by Federal Rule of Civil Procedure 65. A party seeking a preliminary injunction must make a four-part showing: (1) that it is likely to succeed on the merits; (2) that it is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. See *Winter v. Natural Resources Council, Inc.*, 555 U.S. 7, 20 (2008). Regarding the likelihood of success, all that Plaintiff need show is a "better than negligible" likelihood of success if the balance of harms is in its favor, as it is here. *Omega Satellite Prod. Co. v. City of Indianapolis*, 694 F.2d 119, 123 (7th Cir. 1982). Further, where the likelihood of success is great, the balance of harms need not favor the plaintiff in order to allow the injunctive relief. *Id.*

### B. Plaintiff Will Likely Succeed on the Merits

Plaintiff has a strong likelihood of success on its claims for trademark invalidity, non-infringement, and tortious interference.

**1. Trademark Invalidity and Non-Infringement Claims**

Defendant's trademark application for "CHATBOX" is seemingly-invalid. Under 15 U.S.C. § 1052(e)(1), in part it reads "[n]o trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it Consists of a mark which when used on or in connection with the goods of the applicant is merely descriptive. " USPTO has officially determined that "CHATBOX" is merely descriptive and "appears to be generic." (*See* Compl. Exhibit B). Even though Defendant may argue the USPTO's Office Action was non-final, but the Lanham Act clearly states that to overcome "merely descriptive" finding, Defendant has to show "a mark used by the applicant which has become distinctive of the applicant's goods in commerce." To prove the mark has become distinctive, Defendant has to provide "proof of substantially exclusive and continuous use thereof as a mark by the applicant in commerce for the <u>five years before the date on which the claim of distinctiveness is made</u>. " 15 U.S.C. § 1052(f). Here, Defendant filed the application for "CHATBOX" on November 19, 2024, claiming first use in commerce of April 14, 2023. (*See* Compl. Exhibit A). Even assuming Defendant could show substantially exclusive and continuous use, Defendant has only been using the mark little over 2 years as of this date, meaning it is impossible for Defendant to overcome the USPTO's "merely descriptive" finding.

Furthermore, under established precedent, generic terms cannot be subject to trademark protection under any circumstances. *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985) ("A generic term is the ultimate in descriptiveness"). Since the USPTO examiner has determined the mark is generic (*See* Compl. Exhibit B), Defendant cannot have any protectible

ownership interest in the mark, and Plaintiff's use of the generic term cannot constitute infringement. *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 149 (2d Cir. 1997) ("Generic terms can never be protected"). A quick Google search also reveals that before Defendant started using the mark "CHATBOX", companies and developers have been extensively using "CHATBOX" terminology in their products and services, with over 2.7 million results between January 1, 1990 and April 1, 2023, proving that this is generic terminology that belongs to the public domain and cannot be monopolized by any single entity. (*See* Exhibit 1). Generic terms belong to the public domain and cannot be monopolized by anyone.

Therefore, Plaintiff will likely succeed on the trademark invalidity and non-infringement claims.

### 2. Tortious Interference Claims

Plaintiff has established the elements of tortious interference with contract and prospective business expectancy. Under Illinois law, to establish tortious interference with contract, a plaintiff must prove: (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages. *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 160, 545 N.E.2d 672 (1989).

Here, Defendant was aware of Plaintiff's contractual relationship with Apple through the Developer Program Agreement and intentionally induced Apple to remove Plaintiff's application by filing and refusing to withdraw its bad faith trademark complaint with knowledge that "CHATBOX" is generic per the USPTO's determination. This conduct directly caused Apple to

breach its agreement with Plaintiff and interfered with Plaintiff's prospective business relationships. Therefore, Plaintiff will likely succeed on the tortious interference claims.

### C. Plaintiff Will Suffer Irreparable Harm in the Absence of Injunctive Relief

The ongoing interference with Plaintiff's business operations cannot be adequately compensated by monetary damages alone. The facts here establish multiple dimensions of irreparable harm if the TRO is not granted.

### 1. Permanent Loss of Business Assets and Revenue Stream

Plaintiff's application removal from the U.S. App Store represents a large portion of Plaintiff's business operations and is the result of significant investments in development, marketing, and user acquisition. The continued absence from the U.S. App Store permanently eliminates Plaintiff's ability to serve existing customers and acquire new users, immediately halting its primary revenue stream and resulting in estimated monthly lost revenues exceeding $20,000.

### 2. Loss of Customers, Market Share, and Business Opportunities

The U.S. App Store serves as Plaintiff's primary distribution channel of Plaintiff's App, accounting for a large percentage of its revenue. The removal has already disrupted Plaintiff's ability to meet customer demand in the U.S. App Store, loss of repeat customers, and a tarnished reputation for reliability. Customers on the AI chatbox market who depend on Plaintiff's software will seek alternative suppliers like Defendant, many of whom are Plaintiff's direct competitors, leading to a permanent loss of market share. Courts have recognized that loss of market share and the ability to compete are quintessential forms of irreparable harm. See *Black & Decker v. Robert Bosch Tool Corp.*, 2006 U.S. Dist. LEXIS 86990, at *11 (N.D. Ill. Nov. 29,

2006) ("Loss of market share is a key consideration in determining whether a plaintiff has suffered irreparable harm.").

### 3. Damage to Reputation and Goodwill

Defendant's unsubstantiated infringement allegations have caused Apple to remove Plaintiff's application under its trademark infringement notice program, a move that conveys a false impression of wrongdoing to customers and business partners. The resulting harm to Plaintiff's goodwill will take years to rebuild, if it can be restored at all. Courts have repeatedly held that damage to reputation and goodwill constitutes irreparable harm. See *Robert Bosch LLC v. Pylon Mfg. Corp.,* 659 F.3d 1142, 1154 (Fed. Cir. 2011).

### 4. Monetary Judgment Against Defendant is Uncertain

The uncertainty of recovering a money judgment further supports the need for equitable relief in this case. Defendant, while exploiting Apple's trademark enforcement systems to impose burdens on Plaintiff and eliminate legitimate competition against Defendant's App, is a foreign entity with no apparent attachable assets within the United States, making it exceedingly difficult, if not impossible, to recover damages. Courts have recognized that the inability to enforce judgments against foreign defendants adds significant weight to claims of irreparable harm. See *Peng v. Partnerships*, 2021 U.S. Dist. LEXIS 174254, at *7-8 (N.D. Ill. Sept. 14, 2021).

Defendant's conduct highlights its intention to disrupt competition unfairly while avoiding any accountability for its claims. This approach is an abuse of the process that undermines the ability of Plaintiff to seek redress through traditional legal channels.

### 5. Immediate Injunctive Relief Is Necessary

Plaintiff has raised credible defenses to the alleged infringement, including the clear USPTO finding, as detailed in its complaint. However, Apple's handling of Defendant's trademark infringement complaint dictates that Plaintiff's App cannot be restored regardless of the validity of the underlying trademark dispute without Defendant's withdrawal of such complaint, underscoring the urgency of judicial intervention to prevent irreparable harm.

### D. The Balancing of Harms Favors Plaintiff

The third factor, the balance of hardships, strongly favors Plaintiff. Plaintiff has made a strong showing of a likelihood of success on the merits, particularly by demonstrating that its use of merely descriptive and generic term cannot infringe Defendant's seemingly-invalid trademark application. Plaintiff has also established that it faces immediate and irreparable harm— including permanent loss of business operations, market share, reputational damage, and significant disruption to its business—if the requested injunctive relief is not granted. These harms are direct, imminent, and cannot be remedied by monetary relief.

In contrast, Defendant faces no potential harm, since Plaintiff is not seeking any asset freezing under the TRO. Defendant's harm, if any, arises solely from its own bad faith conduct, including attempting to monopolize merely descriptive and generic term despite the USPTO's official determination. Defendant's attempt to stifle competition through enforcement of a seemingly-invalid trademark application should not be considered when weighing the hardships.

Given the strong showing of irreparable harm to Plaintiff and its likelihood of success on the merits, the balance of hardships clearly tips in Plaintiff's favor.

### E. A Temporary Restraining Order Will Not Harm the Public Interest

The public interest strongly favors the granting of equitable relief in favor of Plaintiff.

First, Defendant has misused trademark enforcement mechanisms to impose significant harm on Plaintiff without subjecting its claims to proper judicial review. This conduct undermines public confidence in the integrity of intellectual property enforcement by allowing private parties to exploit procedural loopholes to harm competitors unfairly.

Second, the public has a vested interest in protecting competition, particularly in digital marketplaces like the U.S. App Store, which serve as critical platforms for software developers and businesses. Defendant's actions threaten to stifle fair competition by forcing Plaintiff out of the market through baseless infringement allegations. Allowing Plaintiff to defend itself and continue its operations promotes healthy competition, which benefits consumers by ensuring access to diverse, innovative software products.

Third, the public interest is not advanced by allowing parties to wield seemingly-invalid trademark applications as tools for coercion rather than legitimate enforcement. Granting relief ensures that trademark rights are exercised responsibly and that only valid and enforceable claims are upheld, particularly where the USPTO has officially determined that the claimed mark is merely descriptive and generic.

Lastly, by granting relief, the Court reinforces the importance of judicial oversight in resolving intellectual property disputes and prevents the improper monopolization of merely descriptive and generic terms that belong in the public domain.

**F. Ex Parte Relief is Warranted and Notice Should Not Be Required Under Rule 65(b)(1)**

Notice to Defendant is not required because the legal issues pertaining to the sought-after injunctions here are the invalidity of Defendant's "CHATBOX" trademark application and non-infringement, which are pure questions of law with exceptionally high likelihood of success on

the merits. The USPTO's official Office Action letter has determined "CHATBOX" is merely descriptive and generic, and the central legal issue—whether a merely descriptive and generic term can be subject to trademark protection—is a question of law this Court can decide without factual input from Defendant. Since non-infringement of a merely descriptive and generic mark flows directly from established legal principles and the USPTO's determination, Defendant cannot meaningfully contest the legal standard that merely descriptive and generic terms are unprotectable. Notice would serve no purpose other than to give Defendant an opportunity to file procedural motions and delay tactics that would prolong Plaintiff's harm without adding substantive value to the Court's analysis.

Moreover, were Defendant noticed of this motion, they would likely engage in delay tactics causing further damages that Plaintiff may never be able to recover. Each day of delay results in further irreparable losses in revenue and harms from a Cyprus entity with no known U.S. assets, presenting significant collection risks that make future monetary recovery uncertain. Defendant's demonstrated pattern of bad faith enforcement—filing a trademark infringement complaint against Apple and refused to withdraw such complaint despite knowing the USPTO's May 22, 2025 determination that "CHATBOX" is merely descriptive and generic—shows it will continue harmful actions regardless of legal merit if notices are given.

Therefore, notice of the TRO motion should not be required Under Rule 65(b)(1).

## III. ALTERNATIVE SERVICE IS APPROPRIATE

Foreign service via electronic mail at claims@florate.io and support@florate.io is appropriate under Fed. R. Civ. P. 4 and satisfies due process. Accordingly, the Court should order foreign service via electronic mail at the above electronic addresses.

### A. Alternative Service by Electronic Mail is Appropriate Under Rules 4(h) and 4(f)

Defendant is a foreign company organized under the laws of Cyprus. Fed. R. Civ. P. 4(h) governs service of process on corporations, and pursuant to Rule 4(h)(2), service of a corporation "at a place not within any judicial district of the United States" is to be conducted "in any manner prescribed by Rule 4(f) for serving an individual, except for personal delivery under (f)(2)(C)(i)."

Federal Rule of Civil Procedure 4(f)(3) allows this Court to authorize service of process by any means not prohibited by international agreement as the Court directs. *Gianni Versace, S.P.A. v. P'Ships*, et al., 2019 U.S. Dist. LEXIS 94989, at *3 (N.D. Ill. Feb. 27, 2019 (citing *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002)). The Ninth Circuit in *Rio Properties* held, "without hesitation, " that e-mail service of an online business defendant "was constitutionally acceptable." *Id.* at 1017. The Court reached this conclusion, in part, because the defendant conducted its business over the Internet, used e-mail regularly in its business, and encouraged parties to contact it via e-mail. *Id.*

Here, Defendant, a software development company located in Cyprus and conduct extensive business on U.S. App Store, certainly conducts its business over the Internet and uses e-mail regularly in its business because of the nature of software business. Defendant has to have a valid e-mail address to create an Apple developer account and resolve any issues sent by Apple or users via emails. On Defendant's website florate.io, it also posts support@florate.io as contact. Furthermore, when Defendant filed its trademark complaint with Apple, it only listed email address claims@florate.io as contact and communicated extensively with Plaintiff via such email address after submitting the complaint. Therefore, alternative service by electronic mail is appropriate under Rule Rules 4(h) and 4(f).

**B. Alternative Service by Electronic Mail is Appropriate Under the Hague Convention**

13

In accordance with Rule 4(f)(3), the foreign service must be (1) court ordered; and (2) not prohibited by international agreement. As discussed below, service via electronic mail is not prohibited by any international agreement with Cyprus.

Compliance with the Hague Convention is mandatory when the requested method of service is effectuated within the territory of the foreign signatory. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988). Article 10 allows for service of process through alternative means such as "postal channels," provided that the destination state does not object to those means. Cyprus has not objected to service under Article 10 of the Hague Service Convention.

In July 2024, the Special Commission on the practical operation of the Hague Service Convention issued authoritative conclusions stating that "Article 10(a) includes transmission and service by e-mail, insofar as such method is provided by the law of the State of origin and permitted under the law of the State of destination." *See* Exhibit 2, Item 105, Page 11. This represents the official recognition by the Hague Conference that email service is encompassed within Article 10(a)'s "postal channels" provision. Since Cyprus has not objected to postal channels, it has not objected to email service under this guidance. Therefore, alternative service by electronic mail is appropriate under the Hague Convention.

### C. Alternative Service Via Electronic Mail Comports with Due Process

"Due process requires that notice be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).

Here, Defendant filed its trademark complaint with Apple and listed email address claims@florate.io as contact and communicated extensively with Plaintiff via such email address

after submitting the complaint. Therefore, electronic service is reasonably calculated to provide Defendant notice of this action and afford Defendant an opportunity to respond.

## IV. CONCLUSION

The imminent and irreparable harm caused by Defendant's ongoing enforcement of a seemingly-invalid trademark application far outweighs any potential harm to Defendant or third parties. Plaintiff respectfully requests that this Court issue a TRO compelling Defendant to cease making bad-faith trademark infringement claims based on its "CHATBOX" mark, to instruct Apple Inc. to restore Plaintiff's App, and for alternative service via electronic mail, thereby preserving the status quo and allowing Plaintiff to resolve this dispute without irreparable harm to its business, reputation, and future viability.

Dated: August 21, 2025                                    Respectfully submitted,

                                                         _____/s/ Shuai Zhang_____

                                                         Shuai Zhang
                                                         SZ & CHI LLP
                                                         3808 Union Street Suite 9A-107
                                                         FLUSHING, NY 11354
                                                         Telephone: 216-544-8431
                                                         E-mail: Shuai.Zhang@szclaw.com

                                                         ***ATTORNEY FOR PLAINTIFF***